JAMES L. BANNING,

Defendant Below, Appellant,

*vs.*

ROBERT C. LATIMER, CASSANDRA M. S. FRANKLIN, KATHERINE STEWART, GEORGE H. McGOVERN, HOMEOPATHIC HOSPITAL ASSOCIATION OF DELAWARE, a corporation of the State of Delaware, Defendants Below, and EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, and GEORGE H. McGOVERN, Executors of the Last Will and Testament of MARY R. LATIMER, late of Christiana Hundred, New Castle County and State of Delaware, deceased, Complainants Below,

Appellees.

*Supreme Court, On Appeal, Jan.* 20, 1931.

PENNEWILL, C. J., and RICE, HARRINGTON, RICHARDS, and RODNEY, JJ., sitting.

*Charles F. Curley*, and *Mason P. Morfit*, of Baltimore, Md., for appellant.

*Charles F. Richards*, for appellees.

RICE, J., delivering the opinion of the court:

It is claimed by the appellant that the construction placed upon the will and codicil by the Chancellor is erroneous for the reasons, first, that the primary and ordinary intent of the language of the codicil, as disclosed by the language of the will and codicil, is to provide a legacy of fifty thousand dollars in addition to a legacy of fifty thousand dollars as provided in the will; second, that it was violative of the definitely established principles of construction declared by the Delaware courts.

We are of the opinion that from any reading of the will and codicil together, whether casual or with the utmost care, without taking into consideration the established rules of construction recognized in such cases, one must inevitably reach the conclusion that the testatrix did not intend to provide a legacy of fifty thousand dollars in the codicil, in addition to a bequest of fifty thousand dollars in the will.

Examining the language of the will and codicil in connection with the facts as they appear in both instruments, it is immediately apparent that Miss Latimer was confused at the time she wrote the codicil concerning the bequest to Banning in the will, and that she was uncertain as to the effectiveness of the correction made therein. With this uncertainty in her mind, she did the very natural thing to be done under the circumstances which was to make certain in the codicil that which theretofore had seemed uncertain to her. She accomplished this by explaining the mistake which she thought she had made in the will and then proceeding in a way she believed could not be questioned, to do that which she believed she had done in a questionable manner in her will. It is evident from the language of the codicil that she believed there was some question concerning the effective-

ness of correcting the will by means of a lead pencil and while it is a fact she had made the correction by pen ink, yet it is an important fact that at the time of writing the codicil, she believed the correction had been made by pencil. In the will the intended revocation had been made by drawing a line through the words granting the larger amount, and in the codicil the revocation of the larger amount appearing in the will was accomplished by means of express words of revocation.

The testatrix certainly did not intend to give two legacies to Banning in her original will and it is apparent that she did intend he should have a legacy of fifty thousand dollars. At the time of writing the codicil she was doubtful concerning the effectiveness of the revocation in her will of the larger amount and it is reasonable to conclude that she was also doubtful as to the validity of the bequest of fifty thousand dollars. With this doubt in her mind concerning the bequest of fifty thousand dollars in the original will, it was natural for her, in providing for the legacy, to use the words appearing in the codicil "I now will and bequeath to James L. Banning, Jr., fifty thousand dollars." It will also be noted that in making the revocation in the codicil, she began the same by the use of the words "I now."

Much reliance is placed upon the use by the testatrix of the word "corrected" in the codicil, and it is argued on behalf of the appellant that by reason of the use of this word the testatrix was clear as to the fact of having made the correction from the larger amount to fifty thousand dollars. This argument is not sustained by the other language appearing in the codicil. If she was clear in her mind that she had corrected her will, there would have been no reason for her to refer to this fact in the codicil, and certainly there would have been no occasion for again revoking the bequest of the larger amount. The word "corrected" as used in the codicil has reference to the words appearing in the will before the correction was made as well as to the words appearing thereafter, and if she was clear that she had changed her will in such manner as to provide a legacy of fifty thousand dollars to Banning, then she would also have been clear that in making the correction she had nullified the bequest of the larger amount.

The court are clearly of the opinion that when the language of the will and codicil is considered in connection with the facts appearing upon the face of the will, the primary and ordinary intent of the language is that the testatrix intended James L. Banning, Jr., to receive only one legacy of fifty thousand dollars.

Was the construction placed upon the will and codicil by the Chancellor violative of the definitely established principles of construction? We are of the opinion that it was not. It is claimed that the will was actually and legally corrected before the execution and a legacy of fifty thousand dollars therein given to James L. Banning, Jr.; and that he was entitled to such legacy and to the one of fifty thousand dollars mentioned in the codicil; and in determining otherwise, the Chancellor erroneously declined to follow the rule of construction that "where two legacies are given simpliciter to the same legatee, the one by a will and the other by a codicil, the latter is regarded as cumulative whether its amount be equal or unequal to the former, unless the words of the instrument itself show a contrary intent on the testator's part." The Chancellor did refuse to find that the legacies, one by the will and the other by the codicil, were cumulative, one upon the other, but the reason for his refusal was that the words of the instrument itself showed a contrary intent on the part of the testatrix and this was not in any way contrary to the terms of the rule, but was in full recognition thereof. What the Chancellor did find was that the legacy mentioned in the codicil was not cumulative upon the one mentioned in the will, but was in substitution thereof. There is ample authority of the highest character in support of the principle of law, that legacies given in a will and codicil to the same person are not cumulative, where it appears that the gift by the codicil is intended to be in substitution of the gift in the will. With respect to this principle of law, we cannot do better than quote the following from the opinion of the Chancellor:

"Instead of the rule's embodying a presumption of law which is capable of being rebutted, it is more proper to speak of it as stating a 'method', using the language of Mr. Page (*Section* 1382 of the 2d edition of his work on Wills), 'in which the court is accustomed to deal with given states of evidence and of the inference of fact which the court regularly draws' or, as it is put

by Sir James Wigram in the case just cited, it is 'an inference in favor of a given construction of particular words'.

"The inference, however, is not an unyielding one. It will give way to anything which shows the intent of the testator to have been of contrary effect. Such intent must, however, be disclosed by the words of the instrument itself. It is so recognized in the case before Vice Chancellor Wigram and in the citation from Page. Accordingly it is stated by Underhill in his law of Wills (*1st Ed.*) *Section* 420, that

" 'The presumption that legacies given in different instruments to the same persons are cumulative may be overturned by the intention shown by implication in the second instrument. If it shall appear that the testator intended to revoke the first legacy or if it appears that he was simply explaining the provisions of the first legacy * * * the mere repetition of the legacy will not make it cumulative.'

"To like effect is Theobald in his work on Wills (*7th Ed.*), *page* 159, where he says:

" 'It may, however, appear that the gift by the latter instrument is intended to be substitutional. This may be shown: (b) if the second gift can be looked upon as explanatory of the prior gift. *Mogridge v. Thackwell*, 3 *Ves. Jr.*, 473 (c) if by a codicil the testator revokes a portion of a prior gift and then repeats the rest, so that the repetition may be explained as *ex abundanti cautela*.'

"The authority of *Williams on Executors* (*9th Ed.*) *page* 604, likewise supports the proposition that the legacies are not cumulative where evidence is found in the codicil itself that the second gift was intended by the testator as a substitution for the first, as must be the case where the later instrument was made for the purpose of explaining or better ascertaining the legacy bequeathed by the earlier one.

"The principles just stated are so plainly in harmony with reason as to need no elaboration."

We think it is not necessary to add anything to what we have already stated to show that the legacy in the codicil was explanatory of the legacy in the will and that the testatrix intended it to be in substitution thereof.

It is claimed by the appellant that the Chancellor disregarded the following rule of construction followed by the court, in the case of *Bringhurst v. Orth, et al.*, 7 *Del. Ch. p.* 178, 44 *A.* 783, 784, "in order that a codicil shall operate as a revocation of any part of a will, in the absence of express words to that effect, its provision must be so inconsistent with those of the

will as to exclude any other legitimate inference than that of a change in the testator's intention." This rule of construction was strictly pertinent to the facts in that case where the question before the Chancellor was whether or not there was any inconsistency between the provisions of the will and codicil, but the observation may be made that in determining that there was no actual inconsistency between the two, the Chancellor largely relied upon the intention of the testator. The question in the present case is not one of inconsistent provisions in will and codicil, but it is whether the legacies in the will and codicil were cumulative one upon the other, or whether the testatrix intended that there should be only one legacy of fifty thousand dollars.

While a finding that the legacy in the will and codicil are not cumulative may have the same effect as a finding that the bequest to Banning in the codicil revoked the bequest to him in the will in that he thereby receives only one legacy, yet it is not a revocation within the real meaning of the word. It is what more properly may be termed a substitution of the legacy in the will by the gift in the codicil. In the instant case there was no apparent change of intention on the part of the testatrix, but there was a desire on her part to make clear and certain by the codicil that which in her mind seemed doubtful and uncertain with respect to the legacy to Banning in the original will. At the time of the execution of her will, she intended that Banning should be a beneficiary in the amount of fifty thousand dollars and at the time of writing the codicil she was of the same mind, but it is clear that she did not intend him to be a beneficiary to the extent of one hundred thousand dollars.

For the reasons stated, this court are clearly of the opinion that the Chancellor was not in error in deciding that James L. Banning was entitled to only one legacy of fifty thousand dollars, and, therefore, the court below is affirmed.